**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE | ) Case No. 17-cv-1500 |
| MAURICE SALEM, | ) |
| | ) Judge Robert M. Dow, Jr. |
| Appellant. | ) |
| | ) On appeal from the U.S. Bankruptcy Court |
| | ) for the Northern District of Illinois |
| | ) Bankr. Case No. 09-B-05868 |
| | ) |
| | ) Judge Jacqueline P. Cox |

**MEMORANDUM OPINION AND ORDER**

This case is on appeal from the United States Bankruptcy Court for the Northern District

of Illinois, Eastern Division, Case No. 09-B-05868. Appellant Maurice Salem ("Salem") is an

attorney who represents Ragda Sharifeh ("Ragda") and Haifa Sharifeh ("Haifa") in the

bankruptcy proceeding. Salem appeals from the Bankruptcy Court's February 16, 2017 order [6-

1] sanctioning him and fining him $20,000 for filing two motions in violation of Federal Rule of

Bankruptcy Procedure 9011. Salem also has filed a motion for extension of time to pay the fine

[7]. For the following reasons, the Court affirms the Bankruptcy Court's order. The Court also

grants Salem's motion for extension of time [7] and gives him until January 16, 2018 to pay the

fine imposed by the Bankruptcy Court.

## I. Background

The underlying Bankruptcy Court proceeding (Case No. 09-B-05868) has been pending

since 2009 before Bankruptcy Judge Cox. The case is a Chapter 7 bankruptcy initiated by

Debtor Richard Sharif ("Debtor"), who is Ragda and Haifa's brother. Horace Fox, Jr. is the

bankruptcy trustee ("Trustee"). Debtor filed the bankruptcy action shortly after a federal judge

in Texas ordered him to pay more than $650,000 as a sanction for failing to comply with

discovery orders in a case that he filed in 2003 against Wellness International Network ("WIN").

See *generally Sharif v. Wellness Int'l Network, Ltd.*, 273 F. App'x 316 (5th Cir. Apr. 8, 2008); *Sharif v. Wellness Int'l Network, Ltd*., 2008 WL 2885186 (N.D. Tex. July 22, 2008). WIN also filed an adversary proceeding against Debtor in the bankruptcy case in this district.

One of the major issues in the bankruptcy has been whether assets held in a trust that was allegedly established by Soad Wattar ("Wattar") (the "Trust") should be included in Debtor's bankruptcy estate. Wattar is Debtor, Ragda, and Haifa's mother. A related issue that arose later in the litigation is which trust agreement is the governing document? Debtor originally relied on a purported amended trust agreement signed on May 15, 1996 (the "1996 Trust Amendment"), which named Debtor as trustee, assigned and conveyed to the trustee all of Wattar's real and personal property, granted the trustee authorization to do all acts of an owner, and granted the trustee absolute discretion to litigate any claim in favor of or against Wattar's estate. (As discussed below, Debtor and his sisters subsequently asserted that 1996 Trust Amendment was superseded by later amendments.)

Wattar died on March 17, 2010. In discovery, Debtor produced a copy of a will in which Wattar left all of her estate ("Estate") to the trustee of the Trust acting at the time of her death (*i.e.*, Debtor) (the "April 26, 2007 Will"). The April 26, 2007 Will named Debtor as executor and Ragda as successor executor of Wattar's Estate. (As discussed below, more than five years later Haifa sought to intervene, arguing that a different will, executed on April 28, 2007 and naming Haifa as executrix, should control.)

On July 6, 2010, the Bankruptcy Court determined that Debtor had failed to comply with most of WIN's discovery requests—which sought among other things information concerning the funding of the Trust—and granted WIN's motion for sanctions. As a sanction, the Bankruptcy Court entered default judgment against Debtor and in favor of WIN in the adversary

proceeding, holding that the Trust was the alter ego of Debtor because Debtor treated the Trust's assets as his own property and, therefore, it would be unjust to allow him to maintain that the Trust was a separate entity. On August 5, 2010, the Bankruptcy Court granted the Trustee's motion to turn certain assets of the Trust over to the Trustee.

While Debtor was appealing the Bankruptcy Court's alter ego ruling, his sisters Ragda and Haifa filed suit in Cook County Circuit Court seeking to compel Wells Fargo to transfer $700,000 in Trust assets to Ragda. Ragda alleged that she became the successor trustee of the Trust at the time of her mother's death on March 17, 2010, pursuant to an amendment made to the Trust on October 8, 2007 (the "2007 Trust Amendment"). The Circuit Court dismissed the lawsuit on the basis that it was subject to the jurisdiction of the Bankruptcy Court.

Ragda, purportedly acting as trustee of her mother's trust, also sought to intervene in the bankruptcy proceeding and to have the August 5, 2010 turnover order vacated. Ragda's motion to intervene and motion to vacate were denied on the basis that Ragda failed to timely intervene before the turnover order was entered and failed to provide any support for her contention that she was the successor trustee.

Ragda then filed an adversary proceeding in the bankruptcy case (No. 10-A-02239) against the Trustee and Debtor for wrongful conversion, allegedly in her capacity as the trustee of Wattar's Trust. The Bankruptcy Court granted the Trustee's motion to dismiss the adversary proceeding and issued a detailed opinion discussing the complaint's deficiencies. Among other things, the Bankruptcy Court rejected Ragda's position that she was entitled to bring suit on behalf of the Trust, explaining that by the time Ragda allegedly became successor trustee (July 6, 2010), assets held in Wattar's Trust had already become the property of the bankruptcy estate.

After protracted appeals that went all the way to the Supreme Court, the Bankruptcy Court's finding that the Trust was Debtor's alter ego ultimately was upheld. See *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015). While the case was on remand to the Seventh Circuit, Debtor wrote the Seventh Circuit a letter asserting that "[o]ne piece of evidence [that his attorney] failed to provide or disclose was that I was no longer the trustee [of the Trust] after 2007, revoked by my mother, Soad Wattar and her attorney." Case No. 15-cv-10694, Docket Entry 15-25 at 1. Debtor attached a copy of a document titled "Revocation of Trustee to Soad Wattar Revocable Living Trust of 1992" (the "Revocation of Trustee"). The Revocation of Trustee purported to show that on November 1, 2007, Debtor resigned as trustee and Ragda took over as successor trustee. Debtor's allegations directly contradicted his earlier representations that he was the trustee of the Trust at the time he filed for bankruptcy and that he resigned as trustee in 2010. The Seventh Circuit, apparently unpersuaded by Debtor's letter, affirmed the Bankruptcy Court's July 6, 2010 decision that the Soad Wattar Trust was the alter ego of Debtor. See *Wellness Int'l Network, Ltd. v. Sharif*, 617 F. App'x 589, 591 (7th Cir. 2015).

Soon after Debtor's appeal of the alter ego ruling was concluded, Salem entered an appearance in the bankruptcy case as counsel for Haifa. Haifa, purportedly acting as executrix of Wattar's Estate, filed a motion to vacate the Bankruptcy Court's August 5, 2010 turnover order pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure. Haifa argued that the Estate was never served with process and therefore (1) the Bankruptcy Court did not have personal jurisdiction over the Estate and (2) the Bankruptcy Court's August 5, 2010 order requiring the turnover of property held in the Trust was void. In her reply brief, Haifa attached a document that she claimed was the most recent version of Wattar's will, dated April 28, 2007 (the "April 28, 2007 Will"). The April 28, 2007 Will named Haifa executor of her mother's estate. Haifa

also alleged that Ragda had been the trustee of the Trust since 2007, pursuant to the Trust Revocation. The Bankruptcy Court denied Haifa's motion, and Haifa appealed to this Court. See generally Case No. 15-cv-10694. On reconsideration, this Court determined that the appeal of the denial of the Rule 60(b)(4) motion should be remanded to the Bankruptcy Court for further proceedings. See Case No. 15-cv-10694, Docket Entry 58.

While the appeal in Case No. 15-cv-10694 was pending, Salem entered an appearance on behalf of Ragda in the Bankruptcy Court. Haifa and Ragda filed a motion for leave to sue the Trustee, Hartford, and Wells Fargo. Their motion did not explain why they should be granted leave to sue; instead it "trail[ed] off midsentence" and did not address why Intervenors had a *prima facie* case to sue the Trustee individually. See Case No. 16-cv-4699, docket entry 26-7 at 16. The attached proposed complaint shows that Haifa and Ragda sought to sue Hartford and Wells Fargo for breach of contract, breach of fiduciary duty, and negligence for turning over Trust assets to the Trustee. The proposed complaint also alleged a *Bivens* claim against the Trustee for using his alleged authority as a federal agent to take property that belonged to Wattar's Estate—namely, the proceeds of a Hartford insurance policy and the assets of the Estate held by Wells Fargo—without notice or hearing. The proposed complaint alleged that this violated the Estate's procedural and substantive due process rights. The proposed complaint further asserted that the proceeds from the Hartford insurance policy were exempt from the bankruptcy proceeding pursuant to Illinois law.

In addition, Ragda filed a motion in the Bankruptcy Court seeking reimbursement of more than $900,000 for (1) funds she allegedly spent paying the mortgage and taxes on one of Trust's assets, a house located at 36 Revere Drive, South Barrington, Illinois (the "Barrington

house") while the appeal to the Supreme Court was pending; and (2) the proceeds of the Hartford insurance policy, of which Ragda claimed to be the beneficiary.

The Bankruptcy Court entered orders denying both Ragda and Haifa's motion for leave to sue the Trustee and Ragda's motion for reimbursement (these two motions are referred to collectively as the "Motions"). Ragda and Haifa appealed to this Court. See Case No. 16-cv-4699.

While that appeal was pending, the Bankruptcy Court ordered Salem, Ragda, and Haifa to show cause why they should not be sanctioned for violating Federal Rule of Bankruptcy Procedure 9011(b)(1-3) by filing the Motions. All three appeared at a show-cause hearing on June 21, 2016 and filed written responses.

After considering the parties' arguments, the Bankruptcy Court concluded that the Motions were filed in violation of Rule 9011 because they were based on insufficient legal grounds, were not warranted by existing law, and had no evidentiary support. The Bankruptcy Court discussed in great detail why the Motions were deficient. [6-1] at 54-67. The Bankruptcy Court also noted that the "parties continuously misstate the law and the facts," for instance by repeatedly asserting that the Trustee was a U.S. Trustee in order to establish a *Bivens* claim. *Id.* at 70-71. The Bankruptcy Court also provided an exhaustive discussion of the many times over the past eight years that it had ruled that the Trust assets were part of the bankruptcy estate because the trust was Debtor's alter-ego, and how this ruling had been affirmed. See [6-1] at 23-56, 69-71.

The Bankruptcy Court concluded that the Motions were filed "to harass the bankruptcy Trustee, cause unnecessary delay and . . . increase the cost of litigation" and that Appellant's actions "unnecessarily increased the bankruptcy estate's litigation expenses." [6-1] at 2.

Specifically, the Bankruptcy Court found that the Trustee's fee request included attorneys' fees incurred on the appeal from the Bankruptcy Court order denying the Motions. Before deciding on the appropriate sanctions, the Bankruptcy Court explained that Salem had been involved in a number of other cases in which he had faced "allegations of misconduct" and provided details on those cases. *Id.* at 72-74. The Bankruptcy Court determined that it was appropriate to sanction Salem "by barring him from ever filing any pleadings in this bankruptcy case or any related adversary proceeding without prior leave of Court" and requiring him to pay a $20,000 fine. *Id.* at 74-75.

On March 10, 2017, this Court entered an order affirming the Bankruptcy Court's denial of the Motions. See Case No. 16-cv-4699, Docket Entry 53. Ragda and Haifa have appealed that order to the Seventh Circuit. See Case No. 16-cv-4699, Docket Entry 55.

Currently before the Court is Salem's appeal of the Bankruptcy Court's sanctions order. Salem raises five issues, which the Court considers in turn below. Salem also has filed a motion for extension of time to pay the $20,000 fine, which is discussed at the end of this opinion.

## II.    Legal Standards

Rule 9011(b) provides that, by presenting an "petition, pleading, written motion, or other paper" to the Bankruptcy Court, "an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]"

Fed. R. Bankr. P. 9011(b).

Under Rule 9011(c)(1)(A), a party may move for sanctions if it believes that another party has violated subsection (b). Fed. R. Bankr. P. 9011(c)(1)(A). Pursuant to this subsection's "safe harbor" provision, "[t]he motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected[.]" *Id.*; see also *In re Sokolik*, 635 F.3d 261, 269 (7th Cir. 2011) ("A motion for sanctions may be made under Fed. R. Bankr. P. 9011(c)(1)(A), . . . but any such motion is subject to a 21–day safe harbor provision."). The Bankruptcy Court also has authority, on its own initiative, to "enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b)." Fed. R. Bankr. P. 9011(c)(1)(B).

If the Bankruptcy Court determines that there has been in violation of subdivision (b), it may impose a sanction "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(2). The sanction "may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." *Id.* "Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned." Fed. R. Bankr. P. 9011(c)(2)(B).

Federal Rule of Bankruptcy Procedure 9011 "is modeled after Federal Rule of Civil Procedure 11 and is 'essentially identical' to Rule 11." *In re Dental Profile, Inc*., 446 B.R. 885,

897 (Bkrtcy. N.D. Ill. 2011) (quoting *In re Park Place Assocs.*, 118 B.R. 613, 616 (Bankr. N.D. Ill. 1990)).  Therefore, "courts frequently look to cases that interpret Rule 11 when construing Bankruptcy Rule 9011."  *Id.*  Like sanctions under Rule 9011, "Rule 11 sanctions may be imposed on a party for 'making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose.'"  *Ochs v. Hindman*, 984 F. Supp. 2d 903, 912 (N.D. Ill. 2013) (quoting *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998)).

"A frivolous argument or claim is one that is 'baseless and made without a reasonable and competent inquiry.'"  *Id.*; see *also Berwick Grain Co., Inc. v. Ill. Dep't of Agriculture*, 217 F.3d 502, 504 (7th Cir. 2000).  "To determine whether the attorney in question made a reasonable inquiry into the law, the district court may consider the following factors: the complexity of the legal question involved; whether the document contained a plausible view of the law; whether the document was a good faith effort to extend or modify the law; [and] the amount of time the attorney had to prepare the document and research the relevant law."  *Logan v. Service Employees Int'l Union Local 73*, 2016 WL 5807932, at *3 (N.D. Ill. Oct. 5, 2016) (citing *Brown v. Fed'n of State Med. Bds.*, 830 F.2d 1429, 1435 (7th Cir. 1987), *abrogated on other grounds by Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 930 (7th Cir. 1989)).  "[T]he failure to cite to controlling precedent is sanctionable."  *Stansberry v. Uhlich Children's Home*, 264 F. Supp. 2d 681, 687 n.2 (N.D. Ill. 2003).

"To assess the reasonableness of a party's inquiry into the factual basis of its claims, the test is whether 'competent attorneys performing a reasonable investigation could not have believed in the merit of the position taken in the complaint.'"  *In re Dairy Farmers of America, Inc.*, 80 F. Supp. 3d 838, 860 (N.D. Ill. 2015) (quoting *Harlyn Sales Corp. Profit Sharing Plan v.*

*Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993)). "Courts also look to a number of other factors, including: 'whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts.'" *Id.* (quoting *Brown v. Fed'n of State Med. Bds.*, 830 F.2d 1429, 1435 (7th Cir. 1987)).

"[A] judge can sanction a litigant for filing a frivolous suit or claim regardless of the motives for such filing, and in deciding whether to sanction such a litigant he can take into account a history of frivolous litigation." *Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 936 (7th Cir. 2003); *see also, e.g.*, *Maciosek v. Blue Cross & Blue Shield United of Wisconsin*, 930 F.2d 536, 542 (7th Cir. 1991) (Rule 11 sanctions could be applied against attorneys whose state law claims had been found preempted by federal law, and who nevertheless asserted the same claims in another case without citing and attempting to argue against the first case, even though the first case was not a final judgment when the second case was filed). Further, "'[a] litigant cannot expect to avoid all sanctions under Rule 11 merely because the pleading or motion under scrutiny was not *entirely* frivolous.'" *Retired Chicago Police Ass'n v. Firemen's Annuity and Benefit Fund of Chicago*, 145 F.3d 929, 935 (7th Cir. 1998) (quoting *Melrose v. Shearson/Am. Express, Inc.,* 898 F.2d 1209, 1215 (7th Cir. 1990)); *see also Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 936 (7th Cir. 2003).

The Court reviews the Bankruptcy Court's sanctions orders for an abuse of discretion. *In re Rinaldi*, 778 F.3d 672, 676 (7th Cir. 2015) (holding that Bankruptcy Court did not abuse its

discretion by sanctioning an attorney who ignored its clear and repeated warnings against continuing to submit confusing, frivolous, and needlessly argumentative filings). An abuse of discretion "occurs only when a court has acted contrary to the law or reached an unreasonable result." *In re Sokolik*, 635 F.3d 261, 269 (7th Cir. 2011). "Thus, this Court will uphold any exercise of the bankruptcy court's discretion that could be considered reasonable, 'even if we might have resolved the question differently.'" *Grochocinski v. Schlossberg*, 402 B.R. 825, 834 (N.D. Ill. 2009) (quoting *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003)).

## III. Analysis

In the following analysis, the Court uses the issues set forth in Salem's "Statement of the Issues Presented" as its section headings. See [6] at 5.

### A. Whether the Bankruptcy Court lacked jurisdiction on February 17, 2017, to enter the Opinion and Order (Doc. 329 & 330, Appendix A), on Salem's two motions (Doc. 253 & 254), while the orders denying them were pending on appeal in this District Court on the same issues, Case No. 16-cv-4699

Salem first argues that the Bankruptcy Court did not have jurisdiction to sanction him for filing the Motions during the pendency of Haifa and Ragda's appeals from the Bankruptcy Court orders denying the Motions.

Pursuant to 28 U.S.C. § 1334(a), district courts have original and exclusive jurisdiction of all cases under title 11, the Bankruptcy Code ("Code"). Under 28 U.S.C. § 157(a), the district courts may refer title 11 cases to the bankruptcy judges in their districts. This District has promulgated Internal Operating Procedure 15(a), which generally refers bankruptcy cases to the judges of the District's Bankruptcy Court. As allowed by 28 U.S.C. § 157(b)(1), a bankruptcy judge to whom a case has been referred may enter final judgment on core proceedings arising in or under the Bankruptcy Code. Core proceedings include "proceedings affecting the liquidation of the assets of the estate," 28 U.S.C. § 157(b)(2)(O ), and matters concerning the administration

of the estate, 28 U.S.C. § 157(b)(2)(A). Further, "the imposition of sanctions pursuant to Bankruptcy Rule 9011 is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O)." *In re Carl F. Semrau D.D.S., Ltd.*, 356 B.R. 677, 689 (Bkrtcy. N.D. Ill. 2006); cf. *In re Memorial Estates, Inc.*, 116 B.R. 108, 111 (N.D. Ill. 1990) ("a Rule 9011 determination as to whether sanctions are warranted is a core proceeding subject to appellate review").

Typically, the filing of a notice of appeal divests the lower court of "'its control over those aspects of the case involved in the appeal.'" *JPMorgan Chase Bank, N.A. v. PT Indah Kiat Pulp and Paper Corp. Tbk*, 854 F. Supp. 2d 528, 533 (N.D. Ill. 2012) (quoting *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1240 (7th Cir. 1986)). However, the use of the term "jurisdiction" "does not refer to the court's jurisdiction under any statute or mandatory rule"; instead, "[i]t is a judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time," and "should not be employed to defeat its purpose[]" of avoiding "needless paper shuffling." *Terket v. Lund*, 623 F.2d 29, 33-34 (7th Cir. 1980).

Salem argues that this doctrine divested the Bankruptcy Court of jurisdiction to order sanctions while the appeal was pending. According to Salem, "[t]he bankruptcy court lacked jurisdiction because it had to reach the merits of the two [M]otions, which were on appeal." [25] at 7.

The Court concludes that the Bankruptcy Court had jurisdiction to enter the sanctions order. Simply put, Ragda and Haifa's appeal from the orders denying their Motions did not involve the "same issues" that were before this Court on appeal. *Terket*, 623 F.2d at 34. When the Bankruptcy Court issued its sanctions order, it had already "reach[ed] the merits of the two [M]otions," [25] at 7—after all, that is why its orders denying the Motions were on appeal.

*Terket* is instructive.  In that case, the Seventh Circuit concluded that the district court was not divested of jurisdiction to decide post-judgment motions for attorneys' fees when the underlying judgment was on appeal, even though "in ruling on the issue of attorneys' fees a district court must take into account both the relative merit of the plaintiff's case and the result obtained."  623 F.2d at 34.  The court explained that "this is not the sort of reconsideration of the merits which could lead to altering the substantive judgment or in any way interfere with the pending appeal."  *Id*.  Instead, "[t]he district court merely takes the merits into account, along with many other factors, in making a discretionary decision entirely distinct from the underlying judgment."  *Id*.  The court concluded that "the policy against two courts treating the same issues concurrently does not require withdrawing the district court's power to decide attorneys' fees motions while an appeal is pending."  *Id*.[1]

The Bankruptcy Court's order imposing sanctions is analogous to the district court's order awarding attorneys' fees in *Terket*.  The sanctions order did not reconsider the merits of the Bankruptcy Court's prior orders, and thus did nothing to alter the court's substantive judgment or interfere with the then-pending appeal.  *Terket*, 623 F.2d at 34.  Instead, the Bankruptcy Court "merely  t[ook] the merits [of the Motions] into account, along with many other factors," in reaching its conclusion that sanctions were warranted.  *Id*.

---

[1] See *also Wine & Canvas Development, LLC v. Muylle*, 868 F.3d 534, 542 (7th Cir. 2017) (explaining that although, "[a]s a general rule, once a notice of appeal is filed, jurisdiction lies in the appeals court and not in the district court," "[t]here are several exceptions to this rule, . . . and we have unequivocally held that those exceptions include motions for attorney fees"); *Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995) ("A district court . . . may award attorneys' fees while the merits are on appeal, . . . may consider whether to grant permanent injunctive relief while an appeal from a preliminary injunction is pending, . . . may address ancillary questions such as costs, the registration of judgments, and motions for certificates of probable cause[,] [a]nd when a notice of appeal from an interlocutory order is a frivolous effort to block the normal progress of litigation, the district judge may so certify and continue with the case[.]"  (internal citations omitted)); *Dishman v. Cleary*, 279 F.R.D. 460, 465 (N.D. Ill. 2012) ("A district court may award costs even while a substantive appeal is pending.").

Moreover, since the parties briefed the jurisdiction issue, this Court affirmed the Bankruptcy Court's order denying the two Motions. Reversing the sanctions award on the basis of jurisdiction would simply result in more "needless paper shuffling," *Terket*, 623 F.2d at 34, with the parties re-arguing and the Bankruptcy Court re-deciding whether sanctions are warranted. That waste of resources would defeat the purpose of the rule divesting lower courts of jurisdiction pending appeal.

Apart from arguing that the appeal divested the Bankruptcy Court of jurisdiction to order sanctions, Salem also argues that the Bankruptcy Court did not have authority to take into consideration the costs that the Bankruptcy Estate incurred litigating Haifa and Ragda's appeal in Case No. 16cv4699. This argument is without merit. The Bankruptcy Court is statutorily authorized to enter orders concerning the use of property of the bankruptcy estate. See 28 U.S.C. § 157(b)(2)(A). The Trustee's request for compensation for litigation costs come out of the bankruptcy estate and should be directed to the Bankruptcy Court. See *In re Wilson*, 796 F.3d 818, 821 (7th Cir. 2015) (recognizing that trustees are entitled to compensation from the estate for the services they perform). The Bankruptcy Court did not abuse its discretion in taking these costs into consideration while deciding whether sanctions were warranted.

**B.     Whether Salem's two motions in this case (Doc. 253 & 254), were responsible for any "unnecessary delay" or "needless[ly] increase the cost of litigation," under Rule 9011(b)(1-3)**

In his second issue on appeal, Salem argues that the Bankruptcy Court failed to "state any facts . . . showing any 'unnecessary delay' or any litigation costs . . . as a result of the two [M]otions." [6] at 17. Salem asserts that it was unfair for the Bankruptcy Court to fault Ragda and Haifa for making "repeated filings . . . aimed at undoing settled issues," because "the Motion to commence an action against the Trustee . . . by the Estate of Soad Wattar was never

previously filed and the Estate was never a party in the bankruptcy court proceeding until Salem appeared," and "the Motion for Funds by Ragda Sharifeh for paying the mortgage on a house in the bankruptcy estate . . . was never previously litigated." *Id.* Further, Salem argues perfunctorily that "Ragda's life insurance proceeds of $540,000.00 that the trustee seized was not a frivolous claim" because Ragda "was the beneficiary with standing to sue," *id.*, and that Ragda was entitled to reimbursement for paying the mortgage on the Barrington House, because she was forced to pay it to avoid foreclosure, *id.* at 15.

Before addressing these arguments, the Court notes that Salem does not address the Bankruptcy Court's detailed analysis concerning why Salem failed to establish any legal or factual basis for Ragda and Haifa to sue the Trustee, Hartford and Wells Fargo. Salem did not address the Bankruptcy Court's analysis in his notice of appeal or in either brief, and therefore waived any challenge to that part of the Bankruptcy Court's sanctions order. See [6-1] at 54-62.

The Court now turns to the arguments that Salem did raise on appeal. First, the Court concludes that the Bankruptcy Court did not abuse its discretion in determining that the filing of the Motions caused unnecessary delay. Debtor filed the bankruptcy case in 2009, and the Bankruptcy Court decided in 2010 that the Trust was Debtor's alter ego and its assets could be included in the Bankruptcy estate. Debtor's appeal of the Bankruptcy Court's alter ego ruling was finally resolved in 2015. Yet the bankruptcy case is still going on. Since 2010, Ragda has made repeated, unsuccessful attempts to undo the turnover order and obtain Trust assets, as detailed in Section I of this opinion. Her motion for reimbursement for mortgage payments was another attempt by "the Sharifeh family [to] get back . . . lost assets." [6] at 20. Haifa became involved in the bankruptcy case in 2015, when she filed her Rule 60(b)(4) motion to vacate the turnover order. When she lost that motion, she appealed. But instead of allowing the appeal to

be resolved, she and Ragda moved for permission to sue the Trustee individually for a *Bivens* violation, and to sue the Hartford and Wells Fargo for, essentially, complying with the turnover order. The Bankruptcy Court found that motion to be legally and factually baseless, and Salem does not challenge that aspect of the Bankruptcy Court's sanctions order. Ragda and Haifa's filings, which were prepared by Salem, undoubtedly have delayed the final resolution of the bankruptcy case.

Further, the Bankruptcy Court did not abuse its discretion in rejecting Ragda and Haifa's excuse that "they were not involved in th[e] case throughout the eight years it has been pending." [6-1] at 70. As the Bankruptcy Court explained, Salem "and his clients [had a duty] to review the court records to familiarize themselves with the posture of the case and the courts' prior rulings" and "cannot ignore binding rulings just because they were not actively involved in this matter when the earlier [o]rders were entered." *Id.*

Second, the Bankruptcy Court did not abuse its discretion in finding that Salem's (and his clients') actions needlessly increased the cost of litigation. The Bankruptcy Court identified specific costs that the bankruptcy Estate will incur as a result of Salem filing the motions— namely, the Trustee's costs defending the appeal from the Bankruptcy Court order denying the Motions, which at the time of the order totaled $12,587.50. Salem claims that the Bankruptcy Court should not have considered those costs, because the appeal was pending before this court. But it is the Bankruptcy Court that considers and rules on the Trustee's claims for reimbursement. It was therefore proper for the Bankruptcy Court to take those claims into consideration in its sanctions motion. Salem does not cite any statute or precedent that calls this conclusion into question. See *Silk v. Bd. of Trustees, Moraine Valley Cmty. Coll., Dist. No. 524*, 795 F.3d 698, 709 (7th Cir. 2015) ("'[t]he absence of any supporting authority or development of

an argument constitutes a waiver on appeal'" (quoting *Kramer v. Banc of Am. Sec., LLC,* 355 F.3d 961, 964 n.1 (7th Cir. 2004)).

Third, Salem fails demonstrate that the Bankruptcy Court abused its discretion in finding that Ragda's claim for $540,000 in life insurance proceeds from Hartford was frivolous. He does not support his argument with any discussion of the relevant facts or law, and therefore has waived it. See *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived'" (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)). Even if Salem had bothered to discuss its merits, his argument is baseless. As this Court determined in Case No. 16-cv-4699, Ragda's motion was properly denied because: 1) Ragda failed to adequately plead that she had any interest in the insurance proceeds; and 2) the insurance policy was not exempted from Debtor's bankruptcy estate under Illinois law, 735 ILCS 5/12-1001(f), because only Debtor would be eligible to claim the exemption in the bankruptcy case, and the exemption applies only where the deceased insured's child was "dependent upon" the insured. See Case No. 16-cv-4699, Docket Entry [53] at 10-11.

Fourth, Salem cannot show that the Bankruptcy Court abused its discretion in finding that Ragda had no basis to seek reimbursement for mortgage payments that she made on the Barrington house. Apart from claiming that Ragda had to pay the mortgage payments so the bank would not foreclose of the house, Salem does not cite any law suggesting that Ragda was entitled to reimbursement. See *Crespo*, 824 F.3d at 674 ("arguments that are unsupported by pertinent authority … are waived"). Further, the Court already affirmed the Bankruptcy Court's denial of the motion for reimbursement in Case No. 16-cv-4699, concluding that there was no contractual or statutory basis for Ragda's request for compensation for mortgage payments,

which she voluntarily made on the Barrington house while knowing that the house belonged to the bankruptcy estate, not her.

For these reasons, the Court concludes that the Bankruptcy Court did not abuse its discretion in finding that Salem's filing of the Motions resulted in unnecessary delay and needlessly increased the costs of litigation. See Case No. 16-cv-4699, Docket Entry [53] at 8-10.

## C. Whether filing a motion that seeks leave to file constitutes a filing under Rule 9011(b) and whether the safe harbor rule was applied

Salem, without citing to the applicable statute or any case law, argues that Haifa and Ragda's motion for leave to file an adversary action against the Trustee "is not a filing of a pleading" and therefore is not subject to Rule 9011. [6] at 19. Salem also argues that the Bankruptcy Court failed to apply the safe harbor rule to either of the Motions, implying that he should have been given an opportunity to withdraw the motions before sanctions were imposed.

Neither of Salem's arguments has merit. Rule 9011(b) applies broadly to any "petition, pleading, written motion, [and] other paper." Fed. R. Bankr. P. 9011(b). Both of the Motions obviously fall within the ambit of this rule. To the extent that a motion for leave to commence an action should not be considered a "motion," then it would be an "other paper" and still covered by the rule.

The "safe harbor" that Salem references applies to motions for sanctions filed by parties, and provides that a "motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected[.]" Fed. R. Bankr. P. 9011(c)(1)(A). Sanctions ordered on the Bankruptcy Court's own initiative are covered by a different subdivision of the Rule, and do not contain the same "safe harbor." See Fed. R. Bankr. P. 9011(c)(1)(B), (c)(2)(B). The Bankruptcy

Court complied with the requirements for imposing sanctions on its own initiative, by issuing an order to show cause and allowing Salem a chance to make his case at a hearing. See Fed. R. Bankr. P. 9011(c)(1)(B), (c)(2)(B). Further, Salem never sought to withdraw the Motions, either before or after the show cause order was issued. To the contrary, he appealed the denial of the Motions to this Court, and after this Court affirmed, is appealing again to the Seventh Circuit.

> **D.** **Whether granting the pending appeal in this Court, Case No. 15-cv-10694, would result in the same relief that the two motions Salem was sanctioned for seek**

In the fourth issue he raises on appeal, Salem appears to be arguing that, if Haifa prevails in her appeal in Case No. 15-cv-10694—the appeal from the Bankruptcy Court order denying her Rule 60(b)(4) motion to have the turnover order declared void—then the Bankruptcy Court's sanctions order must have been baseless and Salem must prevail on this appeal, too. Salem posits that if Haifa's Rule 60(b)(4) motion "to get back all of the Sharifeh's family money was not frivolous as to be sanctionable under Rule 9011(b), then how can [Salem's] two motions that seek some of the family member's money back be sanctionable"? [6] at 20.

In Case No. 15-cv-10694, this Court found on reconsideration that remand to the Bankruptcy Court was appropriate to allow the court to address for the first instance certain factual disputes that were not expressly addressed in its opinion. However, the fact that Haifa's Rule 60(b)(4) motion is still under consideration does not mean that the Motions have a sufficient legal and factual basis to avoid Rule 9011 sanctions. To the extent that Haifa had any basis to file a Rule 60(b)(4) motion to vacate the Court's turnover order, this does not mean that she and Ragda had any legal or factual basis to sue the Trustee individually or to sue Hartford and Bank of America for complying with the turnover order, or that Ragda had any basis to seek reimbursement for voluntarily paying the mortgage on the Barrington house. Both Motions were

legally deficient on multiple grounds, as this Court determined when it affirmed the Bankruptcy Court orders denying the motions, see Case No. 16-cv-4699, Docket Entry 53.

### E. Whether Salem's alleged past wrongful acts can be presented, as a propensity to commit wrongful acts, to prove the wrongful act at issue in this case

In the sanctions order, the Bankruptcy Court describes four other cases in which Salem was alleged to have engaged in misconduct that exposed him to potential sanctions. Salem argues that this violated Federal Rule of Evidence 404(b), which "prohibits the admission of evidence of other crimes, wrongs, or acts for the purpose of proving a person's character or propensity to behalf in a certain way," subject to limited exceptions. See Fed. R. Evid. 404(b).

The Bankruptcy Court's discussion of the other cases involving Salem was appropriate and not an abuse of discretion. The Bankruptcy Court made perfectly clear that Salem was "not being sanctioned for his past conduct," but rather that "[h]is past conduct is being mentioned to show that this is not his first brush with allegations of misconduct." [6-1] at 74. More importantly, the Seventh Circuit has recognized that a court is "permitted to consider [a party's] past conduct in fashioning Rule 11 sanctions, as the decision to impose such sanctions and their form may be influenced by consideration of a party's past misconduct." *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 710 (7th Cir. 2001) (citing Fed. R. Civ. P. 11, Advisory Committee's Notes (1993 Amendments) (noting that "in deciding whether to impose a sanction or what sanctions would be appropriate," factors to consider include whether conduct "was part of a pattern of activity" or "whether the person has engaged in similar conduct in other litigation")); see also *Reed*, 330 F.3d at 936; *Maciosek*, 930 F.2d at 542; cf. *In re Dental Profile*, 446 B.R. at 897 (explaining that the courts "look to cases that interpret Rule 11 when construing" Bankruptcy Rule 9011). That approach simply reflects the common sense principle—applied in

the civil and criminal contexts—that first-time offenders are entitled to more leniency than recidivists, whether the offense is frivolous filings or robbing banks.

**F.     Whether the alleged past wrongful conduct of Salem is clearly erroneous**

Salem argues that the Bankruptcy Court's discussion of the four other cases in which he was alleged to have engaged in misconduct contains "claims about [his] past conduct that [are] blatantly false and defamatory to discredit him."  [6] at 20.  According to Salem, "these claims should be irrelevant to this Court's ruling," but "must be addressed to show how they are false [and] prejudicial."  *Id.*

The first case that the Bankruptcy Court cited, *Salem v. Paroli*, arose out of Salem's dispute with his brother when Salem acted as the executor of their mothers' will.  See *Salem v. Paroli Jr. et al.*, 260 B.R. 246 (Bankr. S.D.N.Y. 2001); *Salem v. Paroli*, 79 Fed. Appx. 455 (2d Cir. 2003); *Neshewat v. Salem*, 365 F. Supp. 2d 508 (S.D.N.Y. 2005).  The district court's opinion shows that "[a] default judgment was entered against [Salem]" in a suit that his brother brought against him for "malicious prosecution, abuse of process, defamation, libel and slander." *Neshewat*, 365 F. Supp. 2d at 513.  It also shows that Salem was "enjoined from filing or prosecuting, without leave of . . . Court, further actions or proceedings in the federal courts against [his brother] or his counsel . . . seeking review of or relief from the default judgment entered against him in New York State Supreme Court."  *Id.* at 529-30.  The district court "recognize[d] that the imposition of a monetary sanction might be warranted," as well, but concluded that "it is unlikely that such sanctions would successfully curb future litigation by [Salem] as he appears to be nearly judgment-proof."  *Id.* at 529.

Salem argues that "[a]ll the *[Salem v. Paroli]* litigation dealt with various inheritance issues and [the] $166,884.86 [judgment] was *not* as a result of being enjoined to file, as Judge

Cox wants this Court to believe[.]" [6] at 21. But the Bankruptcy Court never said that the $166,884.86 judgment was a fine related to the injunction. Instead, the Bankruptcy Court accurately explained that Salem "was a defendant/judgment debtor" in *Salem v. Paroli*, that he "filed a counterclaim when [his brother] tried to enforce a $166,884.86 default judgment entered against him in the state court," and that he "also sued [his brother]'s attorney, the state court judge and others in federal court." [6-1] at 73. The Bankruptcy Court correctly summarized that the federal district court "ultimately enjoined [Salem] from filing, without leave of court, further actions in federal court against the judgment creditor, his brother." *Id.*

The second case cited by the Bankruptcy Court is *In re Morris Senior Living LLC*, 2013 WL 5753834 (N.D. Ill. Sep't 25, 2013). In that case, Judge Cox held Salem in contempt and fined him for refusing to timely dismiss three lawsuits that he filed outside of the bankruptcy case, regarding matters in the bankruptcy case. Salem argues that citation to *In re Morris* was inappropriate because "on appeal the District Court found that Judge Cox **was wrong and reversed her decision**" and vacated the sanctions. [6] at 21 (emphasis by Salem). According to Salem, "Judge Cox's description of this case is her opinion, which is no longer valid because she was reversed on appeal." *Id.*

Salem's criticism is baseless. Bankruptcy Judge Cox expressly recognized in her sanctions order that, in *In re Morris*, "a District Court reversed [her] order finding Mr. Salem in contempt" because the contempt order "was conclusory." *Id.* But there is no reason why Judge Cox cannot discuss what happened in *In re Morris*, even if sanctions ultimately were not imposed against Salem in that case. Further, the district court did not vacate Judge Cox's subsequent opinion, in which she cautioned Salem that his clients had an insufficient legal basis and no evidence to carry their burden to demonstrate that they had a prima facie claim against a

bankruptcy trustee's counsel for fraudulent inducement, and that this came "perilously close to warranting sanctions under Federal Rule of Bankruptcy Procedure 9011(b)(2) and (3)." *In re Morris Senior Living, LLC*, 504 B.R. 490, 495 & n.1 (Bkrtcy. N.D. Ill. 2014).

The third case that the Bankruptcy Court referenced was *Salem v. Kozlov*, 2016 WL 4169102 (N.D. Ill. Aug. 8, 2016). In that case, Salem brought an action against the Illinois Attorney Registration and Disciplinary Commission ("ARDC"), its attorneys, and its administrator, "alleging that [the] [d]efendants conspired to unconstitutionally deprive him of his permission to appear pro hac vice in Illinois courts." *Id*. at *1. The district court dismissed Appellant's second amended complaint without prejudice on the basis that he "failed to allege well-pleaded facts sufficient to support a claim for relief on any of his federal law claims." *Id*. The district court's opinion noted that Salem's "allegation that the ARDC targeted him because he owned a home in Illinois is contradicted by the documents attached to the [second amended complaint]" and "therefore, the Court is not required to accept the allegation as true." *Id*. at *6. It further noted that Salem's pro hac vice status had been terminated in four Illinois state court cases. *Id*. at *4-5. The district court denied the defendants' motion for sanctions, finding that they were not warranted at that early stage in the case, but cautioned that if Salem "elects to re-file his complaint and persists in presenting potentially spurious allegations the Court will entertain a renewed motion for sanctions at that time and may hold an evidentiary hearing." *Id*. at *8.

It is not clear from Salem's brief what he thinks the Bankruptcy Court got wrong when it summarized the *Kozlov* proceedings. See [6] at 21-22. Indeed, the Bankruptcy Court accurately summarized that case. See [6-1] at 73-74. Salem asserts that the ARDC subsequently conceded that it could not prohibit him from practicing pro hac vice in Illinois simply because he

maintained a residence in Illinois, and argues that the ARDC's concession made the controversy in *Kozlov* moot. Be that as it may, it does not undermine the district court's conclusion in *Kozlov* that Salem's second amended complaint failed to state a claim for conspiracy, or the fact that the defendants sought sanctions against Salem. There is nothing "false [or] defamatory" in the Bankruptcy Court's discussion of *Kozlov*. [6] at 20.

The final case discussed by the Bankruptcy Court was *Kienlen v. Christofalos*, Bankruptcy Case No. 13-47319 and Adversary Case No. 14-00337. See *also Kienlen v. Christofalos*, 2016 WL 3268164 (N.D. Ill. June 14, 2016); *Lardas v. Grcic*, 847 F.3d 561, 570 (7th Cir. 2017). In that matter, Salem's client, Christofalos, was denied a Chapter 7 bankruptcy discharge, and the District Court and Seventh Circuit affirmed. A central issue in those cases was whether the debtor concealed or mispresented assets. The following paragraph of the Seventh Circuit's opinion is relevant here:

> Christofalos pleads for clemency, contending that it was not he but his attorney who could not have "'cared less' about the accuracy of the schedules" [listing his assets] and that it would be a "gross injustice to penalize Christofalos for the incompetence of his counsel." The brief making this argument was filed by the same attorney, Maurice Salem, who accuses himself of incompetence. Whether attorney Salem committed malpractice or violated the Illinois Rules of Professional Conduct is not before this court. But Salem himself testified in the adversary proceeding that he reviewed the schedules and statement of financial affairs with his client, paragraph by paragraph. That evidently unrebutted testimony supports the bankruptcy court's conclusion that Christofalos's misstatements were not inadvertent but were intentional and fraudulent. The denial of Christofalos's petition for a Chapter 7 discharge is AFFIRMED. Given the gravity of the apparent misconduct here, we are referring this case to the United States Attorney for the Northern District of Illinois for further review.

*Lardas v. Grcic*, 847 F.3d 561, 570 (7th Cir. 2017).

Salem claims that "Judge Cox wants this Court to believe that the Seventh Circuit accused [Salem] of malpractice and of violating Rules of Professional Conduct and referred him to the US Attorney," which "is *absolutely false*, prejudicial, and intended to discredit [him]." [6]

at 22 (emphasis by Appellant). Salem also asserts that the Seventh Circuit referred the debtor to the US Attorney, not Appellant. [6] at 23.

Salem grossly mischaracterizes the Bankruptcy Court's discussion of the Seventh Circuit's opinion. The Bankruptcy Court, quoting in places directly from the Seventh Circuit's opinion, accurately explained:

> The debtor [Christafalos] plead "for clemency, contending that it was not he but his attorney who could not have 'cared less' about the accuracy of the schedules.' [The Seventh Circuit] noted that this brief was filed by the same attorney, Mr. Maurice Salem, accusing himself of incompetence, while stating "[w]hether attorney Salem committed malpractice or violated the Illinois Rules of Professional Conduct is not before this court." The Seventh Circuit affirmed the denial of discharge and said that "[g]iven the gravity of the apparent misconduct here, we are referring this case to the United States Attorney for the Northern District of Illinois for further review."

[6-1] at 74. This discussion is fully consistent with the Seventh Circuit opinion quoted above.

After reviewing the underlying cases, the Bankruptcy Court's description of the cases, and Salem's criticism of the Bankruptcy Court's descriptions, the Court concludes that the Bankruptcy Court's opinion was entirely accurate, and certainly not "blatantly false and defamatory." [6] at 20. Ironically, it is Salem who has impugned the integrity of Bankruptcy Judge Cox without any basis. It is baffling why Salem has chosen to do so. Did he simply misread (in many ways) the Bankruptcy Court's opinion? Or did he purposely misrepresent the opinion, perhaps hoping that this Court would not bother to read the underlying orders that the Bankruptcy Court cited? Whatever the reason, Salem fails to convince the Court that the Bankruptcy Court did anything wrong, and instead tempts the Court to impose sanctions of its own.

### G. Whether these sanctions will chill legitimate litigation

Salem's last argument is that the Bankruptcy Court's imposition of sanctions will chill other parties from engaging in meritorious litigation. This argument can be disposed of in short order. Salem has not demonstrated that the conduct for which he was sanctioned constituted legitimate litigation. The Bankruptcy Court acted well within its discretion when it determined that the Motions filed by Appellant violated Rule 9011. If the Bankruptcy Court's imposition of sanctions chills the type of litigation that Salem has engaged in, that is a good thing. Rule 9011 is intended to discourage litigation that is filed for an improper purpose or that lacks a sufficient legal or factual basis.

### H. Motion for extension of time

In his motion for extension of time [7], Salem asks to be given until November 27, 2017 to pay the fine or, in the alternative, to stay the fine pending appeal. The Court has deferred ruling on Salem's motion during the pendency of the appeal, which in essence has operated as a *de facto* stay of the obligation to pay. Now that the appeal has been resolved against Salem, his motion to extend the time to pay the fine is granted. He must pay the fine by January 16, 2018.

## IV. Conclusion

For the foregoing reasons, the Court affirms the Bankruptcy Court's order. The Court also grants Appellant's motion for extension of time [7] and extends the time for Appellant to pay the fine until January 16, 2018.

Dated: December 14, 2017

Robert M. Dow, Jr.
United States District Judge